No. 84-163

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

IN THE MATTER OF WILLIAM RAYNES,
a Police Officer.

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Clary & Clary; Thomas Clary, Great Falls, Montana

For Respondent:

David V. Gliko, City Attorney, Great Falls, Montana

Submitted on Briefs:  Dec. 20, 1984

Decided:  April 30, 1985

Filed:  APR 30 1985

*Ethel M. Harrison*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This an appeal from the District Court of the Eighth Judicial District, in and for the County of Cascade, State of Montana, upholding the findings and decision of the City Police Commission of Great Falls, Montana. The District Court upheld the findings of the Police Commission finding the conduct of Officer William Raynes unbecoming an officer and upholding his dismissal from the Great Falls Police Department. Sergeant William Raynes appeals. We affirm the decision of the District Court.

On December 6 through 9, 1982, the Police Commission of the City of Great Falls, was informed of charges which alleged that Sergeant William Raynes engaged in conduct unbecoming a police officer and that such conduct brought reproach upon the police force of that city. On January 12, 1983, the Police Commission issued its findings of fact, conclusions of law, and judgment and recommendation which found Sgt. Raynes guilty of the charges and recommended his permanent discharge from the Great Falls Police Force.

The findings and conclusions of the Police Commission were confirmed by the City Manager of the City of Great Falls by an order dated January 14, 1983. Appeal was sought by petition for judicial review to the District Court of Cascade County. The Honorable James Wheelis from Missoula was called in to hear the appeal and as previously noted, affirmed the findings and conclusions and judgment of the Police Commission.

For some eighteen years the petitioner, William Raynes, served the City of Great Falls as a police officer, rising to the rank of Sergeant. Prior to the events that led to this

case, his record indicates that he served Great Falls as a fine officer and had been given recommendations and promotions due to his exemplary service. A summary of Sgt. Raynes' testimony indicates that while a member of the Police Department, he became interested in hypnosis. Throughout his career as a police officer he pursued this interest in hypnosis by considerable outside reading and by taking courses offered by both private and public sources. His intention was to further his interest in hypnosis therapy, thereby becomming a better policeman by working with people in that capacity. He testified that due to economic needs, he felt it would be in his best financial interest to set up a private hypnosis service to aid people suffering from weight and smoking problems. Prior to doing so, he consulted his attorney, Mr. Clary, regarding licensing of the operation. In addition, he testified that he was cleared by the Police Department and received no opposition to his efforts to setup a private hypnosis business.

Sgt. Raynes advertised in the Great Falls Tribune, the local newspaper, that hypnosis therapy was available to persons with weight and smoking problems. Through these ads and by word of mouth from people who had already used his services, he began to build up a clientele in addition to his duties as a police officer. While the record contains no definite information as to the number of people that consulted him, it is obvious that over a period of time he built up a fair practice.

Rumors began circulating in Great Falls and complaints were made by several women to either friends or family, prompting an investigation into Sgt. Raynes' activities as a hypnotist. The allegations contained information that

sexual advances were being made by Sgt. Raynes in the treatment of certain women. Ultimately a complaint was filed against Sgt. Raynes under the provisions of Title 7, Chapter 32, pt. 41, MCA. This complaint was later amended charging Sgt. Raynes with conduct that was unbecoming a police officer and which brought reproach upon the police force.

The Police Commission named a private practitioner in the City of Great Falls, Mr. Robert James as a hearings examiner. He was named due to the fact that legal questions were presented to the Commission and the Montana Rules of Evidence were to govern the hearing for Sgt. Raynes, pursuant to section 7-32-4155, MCA, which gives the Police Commission jurisdiction to hear such matters. The complaint filed with the Police Commission contained six counts. Count four was dismissed due to the failure of the victim witness to appear and Sgt. Raynes was found guilty of the remaining five counts. Sgt. Raynes was represented by counsel, and the City of Great Falls was represented by City Attorney, David Gliko.

The record indicates that in December of 1973, Sgt. Raynes signed the Law Enforcement Code of ethics in which he agreed to keep his private life unsoiled as an example to others. In addition, the Police Department manual was introduced which provided that:

> "Public respect for the police department is necessary for effective law enforcement. Police officers should be above reproach. If one officer is dishonest, the entire department may be discredited. An officer must avoid any conduct which would reflect poorly on himself or the department."

The code of conduct in the Department manual is not a condition of employment but is a guideline for police conduct.

Count I of the charges against Sgt. Raynes indicates that Jane Doe-1 read an advertisement in a newspaper indicating a person could stop smoking through hypnosis. She called the number listed in the ad and talked to Sgt. Raynes. An appointment was set for the purpose of receiving counseling and self-hypnosis to help her stop smoking. Her testimony indicates that during the first session with Sgt. Raynes he advised her he was a police officer and that she had nothing to worry about. During the session he touched and held her hand for the purpose of creating a sexuality that "she did not know existed within her." She was told that sexual feelings would build in intensity and could be moved to different parts of her body. Sgt. Raynes admitted using this type of technique. This session with Jane Doe-1 was tape-recorded by Raynes and introduced as an exhibit. It indicated extensive references to sexual feelings. She testified that the tape either ran out or was stopped prior to the end of the session. The Commission found that she was a credible witness and noted that as a result of her experience, she did not trust the police or the police department.

Jane Doe-2 had a session with Sgt. Raynes for weight control counseling. She also testified that he introduced himself as a policeman. Again that first session was tape-recorded and the tape reflected this same attempt to create a sensual feeling in her hand that he said she could move around to various parts of her body. The tape also indicated many sexual and sensual references; but very little about weight control.

During the second session with Jane Doe-2, Sgt. Raynes again created a "sexual feeling" in her hand, but the tape

5

indicates no weight control counseling was discussed. During that session he asked if he could kiss her, which he did, and advised her that she would feel no shame or embarrassment. During that session Sgt. Raynes engaged in sexual intercourse with her. She testified that she believed that she was under the influence of hypnosis during the second session. Sgt. Raynes, during examination, admitted the sexual contact with Jane Doe-2. In addition, he asked Jane Doe-2 to accompany him to Helena, Montana, for more sexual activity. The Police Commission found that following the second session with Jane Doe-2, Sgt. Raynes erased the tape-recording of that session. The Board found that as a result of these sessions with Sgt. Raynes Jane Doe-2 was embarrassed and ashamed. The Board found her to be a credible witness.

Jane Doe-3 was contacted by the Police Department and asked to participate in the investigation of Sgt. Raynes. She agreed to cooperate and contacted Sgt. Raynes by phone, during which he indicated he was a police officer. She told Sgt. Raynes that she wanted to quit smoking and had sessions, all of which were taped.

During these sessions, Sgt. Raynes made extensive and constant sexual suggestions. Jane Doe-3 did not encourage this behavior, and again he attempted to create a "sexual feeling" in her hand which he said would build and intensify. Sgt. Raynes discussed with her "enhancing sexual feelings through hypnosis" and told her that she was beautiful and desirable. He begged her to come back for further treatments. During his testimony he admitted sexual references and that his actions were "totally out of line." The Commission found Jane Doe-3 to be a credible witness.

6

Jane Doe-4 attended a session with Sgt. Raynes for the purpose of receiving counseling through hypnosis in weight control. She testified that she knew he was a policeman prior to making her appointment, and that he told her he was a policeman and that he could be trusted. During the session, Sgt. Raynes suggested to Jane Doe-4 that he could create a "sexual feeling in her hand" and that she could transfer it to other parts of her body. He admitted using these techniques and admitted placing his hand on her breast. She did not encourage such contact, was embarrassed and did not return. The Police Commission found her to be a credible witness.

Jane Doe-5 read an article in a newspaper which described the use of hypnosis by the Great Falls Police Department. The article included a photograph of Sgt. Raynes holding an award. Beneath that article she saw St. Raynes' advertisement for his private hypnosis service. She called Sgt. Raynes for hypnotic treatment for weight control and attended two sessions for which she was charged $60. During the first session, he advised her he was a Police Sergeant and could be trusted. During both sessions, he suggested that she could experience a "sexual feeling" on the back of her hand. During the second session he made sexual references, kissed her on the neck and removed her blouse. During that session Sgt. Raynes engaged in sexual intercourse with her. Like a prior Jane Doe, he made suggestions that she accompany him to Helena for further sexual activity.

Sometime after the session with Jane Doe-5 she was called by Raynes who advised her that her ex-husband had filed criminal charges against her. As Jane Doe-5 explained as taken from the trial transcript: "Yes, he [Sgt. Raynes]

7

said that he--he said, 'well, I get people out of trouble for speeding tickets and such things.' And he said he would get me off the hook." The Commission found Jane Doe-5 to be a credible witness.

Following the above summary of the facts presented at the hearing, the Police Commission made its findings of fact and judgment. Those findings found that there was substantial, credible evidence indicating that Sgt. Raynes engaged in conduct unbecoming an officer, and that his conduct brought reproach upon the Police Department. The charges set forth in counts 1, 2, 3, 5, and 6 are true; the fact that he was off-duty when the incidents occurred did not excuse his conduct. He had represented to some of his women clients that he was a police officer in order to give them confidence in him. This was not a case where a public employee engaged in conduct in the privacy of his home, it was a case of a public employee who established a private business, dealt with women named in the complaint, and used his status as a police officer to gain their confidence and trust. There was substantial evidence showing that he gained their confidence and trust in order to attempt to seduce them. The Commission found that this conduct was reprehensible and repugnant and constituted conduct unbecoming an officer.

The Commission further found his explanation that he attempted to create a "sexual or sensual" feeling in a woman's hand to prove that hypnosis in fact worked, unpersuasive. The back of the hand is a place one ordinarily does not expect to feel sexual sensations. The Commission found that he was selective in his methods of hypnosis with various persons under his care.

The Commission recognized the right of privacy of individuals under the federal and state constitutions. However, in its opinion, the right of privacy does not necessarily extend to all conduct of an off-duty police officer. It found in this case, that the state had an overriding and compelling interest in protecting the public and preserving the integrity of the Police Department and that such interest overrode Sgt. Raynes' right to privacy. The Commission further found that Raynes' argument that the City had changed the conditions of his employment by adopting a code of conduct was without merit. They found that his conduct was unbecoming a police officer and brought reproach upon the Police Department. His conduct was unwarranted despite the fact that the Commission interpreted the "Code of Conduct" as a guideline for conduct and not a condition of employment.

The Commission recommended that despite his record of eighteen years with the police department, his conduct in this case did not constitute a mistake which would warrant a suspension or reduction in rank. It felt his conduct was such that, effective immediately after the hearing, Sgt. Raynes should be permanently discharged from his position and duty as a police officer.

The appellant appealed to the District Court requesting a review of the questions of law and facts regarding the Commission's decision. The District Court upheld the Police Commission, thereby necessitating this appeal.

Three issues are presented to this Court for review:

(1) Should the District Court have ordered a new hearing for Sergeant William Raynes because of the failure of the Police Commission to allow William Raynes to obtain

9

certain prehearing information through normal discovery procedures and by the failure of the Police Commission to allow William Raynes to have witnesses testify as to the standard of conduct at the Great Falls Police Department?

(2) Did the City of Great Falls meet its burden of proof for each of the charges brought against William Raynes?

(3) Should the District Court have found that the termination of William Raynes was excessive punishment in view of the amount of time and the record of William Raynes as a police officer for the City of Great Falls?

The appellant argues under his first issue, that the petitioner Raynes should have obtained a new hearing from the District Court to allow certain prehearing information through normal discovery procedures; and because of the failure of the Police Commission to allow petitioner Raynes to have witnesses testify as to the standard of conduct at the Great Falls Police Department.

Appellant further argues that because Raynes was not charged with criminal sexual conduct and because no criminal charges had been filed against him, the Police Commission and the District Court could not presume the alleged conduct of Raynes and these women was anything but consensual. He further argues that under section 49-2-303, MCA, the law does not allow the termination of a government employee's position based upon non-criminal conduct with a member of the opposite sex. Under the same issue, he buffers his argument that under Article II, section 10 of the Montana Constitution, he has the right of privacy essential to the well being of a free society and this shall not be infringed without a showing of a compelling state interest. In support of his argument, he cites Smith v. Price (1980), 446 F.Supp. 828 at

10

834: "They [police and city officials] disapprove--as most citizens do--of police officers running around on their wives." However, the court said that the defendant-official must show that the officer's off-duty marital misconduct in some way affected the performance of his duties and adversely affected the public image of the officer as a police officer or of the police department as a public body. He argues the City of Great Falls failed to show such evidence, and therefore, a termination cannot be supported.

However, if appellant had properly Shepardized Smith v. Price, supra, he would have discovered that the Fifth Circuit Court of Appeals in Smith v. Price (1980), 616 F.2d 1371, held that: (1) the police officer's dismissal was not Constitutionally improper, and (2) the police officer's challenge to regulations which are not asserted as a basis for his discharge was nonjusticiable. Therefore, as noted in respondent's brief, the above case in its final holding by the Fifth Circuit is totally in support of the City's dismissal of Sgt. Raynes.

As the District Court noted in its order on appeal, this is not a case that involves the question of private sexual practice or mores. This case involves an advertised business about which there is substantial evidence to show that the petitioner traded upon his position as a police officer to gain the trust of his customers, then breached that position of trust through wholly unexpected practices. It is this which separates this case from cases relied upon by the petitioner. We agree.

In addition under this issue, the appellant argues that he was denied discovery relevant to his defense of "discriminatory law enforcement" and denied discovery to test

11

the credibility of the witnesses. Throughout his hearing he attempted to obtain information concerning various disciplinary cases that occurred to officers of the Great Falls Police Department over a ten year period. Questions on examination of Chief of Police Anderson, and certain interrogatories which were submitted by his counsel were denied by the Police Commission pursuant to Rule 26(c) M.R.Civ.P., in an order dated April 27, 1982, which states:

> "The protective order is granted for the reason that information requested by Sergeant Raynes is irrelevant to the proceedings and, further, the information sought is not reasonably calculated to lead to the discovery of admissible evidence."

A second order was issued by the hearings examiner for the Police Commission on May 12, 1982, in response to appellant's request to modify the order of April 27, 1982. In the second order the hearings examiner noted:

> "As indicated previously, the interrogatories propounded by Sergeant Raynes, which are subject to the protective order, are irrelevant to these proceedings. Sergeant Raynes is presently in possession of the names of the persons the City of Great Falls intends to call as witnesses. Only three of these are employees of the City. The officer has the authority, through discovery, to establish evidence as to the veracity and character of these witnesses without obtaining the information requested in his previous interrogatories."

The question here is totally one of relevancy. A review of the pertinent precedent shows that past conduct or action is never admissible as relevant in a case regarding a specific charge. Here, the proposed evidence was not relevant.

The Commission recognized the right of privacy of the individual under the federal and state constitutions but held

12

that the right does not necessarily extend to all conduct of a police officer while not on duty. The Commission found that the state has such an overriding and compelling interest in protecting the public and preserving the integrity of the Police Department that such interest overrides Sgt. Raynes' right to privacy. This finding of the Police Commission was upheld by the District Court, and we agree.

Issue two, concerns whether the City of Great Falls met its burden of proof for each of the charges against Sgt. Raynes. We have previously set forth the summary of the findings of fact and conclusions of law of the Police Commission of the City of Great Falls. This decision was reviewed by Judge Wheelis called in to sit as District Judge for Cascade County, who noted that the District Court in this case is charged with reviewing the questions of law and fact implicit within the Police Commission's decision. The review of the law is to determine whether the rulings are correct; a review of the facts is based on the substantial evidence test. Miskovich v. City of Helena (1976), 170 Mont. 138, 551 P.2d 995. The findings and decisions of the Commission are deemed final and conclusive provided that substantial evidence exists to support them, Baily v. The Examining and Trial Board (1910), 42 Mont. 216, 112 P. 69. The District Court held that the findings and conclusions of the Police Commission with regard to the charge of conduct unbecoming an officer and with regard to dismissal of the petitioner from employment, were based on proper rulings of law and substantial evidence. Therefore, the District Court affirmed the judgment of the Police Commission. We uphold the District Court's decision in upholding the findings of fact, conclusions of law and judgment of the Police Commission.

The final issue before us is whether or not the termination of William Raynes was excessive punishment in view of the excellent record and eighteen years of service he had as a police officer with the City of Great Falls. Here the District Court in reviewing the termination of Sgt. Raynes found there was substantial evidence to support the Commission's decision. We find that because of the nature of the petitioner's conduct, the punishment given by the Commission was not such as to constitute abuse of discretion and the dismissal as ordered by the Commission is upheld.

We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices