No. 00-826

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 166


DAVID J. WOLNY,

Appellant,

v.

CITY OF BOZEMAN,

Respondent.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Bill Hanson, Attorney PLLC, Bozeman, Montana

For Respondent:

Timothy A. Cooper, Staff Attorney, City of Bozeman, Bozeman, Montana

Submitted on Briefs: April 19, 2001
Decided: August 23, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 Police Officer, David J. Wolny, was terminated from the police department on May 29, 1998. Wolny appealed his termination to the Bozeman Police Commission which affirmed the City's decision. Wolny then appealed to the District Court for the Eighteenth Judicial District in Gallatin County. The District Court upheld the Commission's Findings of Fact and Conclusions of Law. Wolny appeals the opinion and order of the District Court. We affirm the order of the District Court.

¶2 The following issues are raised on appeal:

¶3 (1) Did the District Court err when it upheld the Commission's finding that Wolny received adequate notice of his alleged false or misleading statements?

¶4 (2) Did the District Court err when it concluded that the Police Commission properly considered the testimony of Carolyn Thomas?

¶5 (3) Is the Police Commission's finding that Wolny was insubordinate supported by substantial evidence?

¶6 (4) Did the District Court err when it concluded that the Commission properly excluded the disciplinary history of other officers?

¶7 (5) Does sufficient evidence exist to support the Commission's finding that the City complied with its progressive discipline policy when the City did not offer Wolny's personnel file at the hearing?

## FACTUAL BACKGROUND

¶8 On October 10, 1997, at 1:40 a.m., several Bozeman police officers responded to a possible assault and trespass in the area of Babcock and South 8th Avenue. Officer David J. Wolny was among the officers who responded to the call. While the officers were investigating, a two car collision occurred in this same intersection. Officer Wolny approached the cars to assist the drivers. William Hurley, a bicyclist, started to ride

towards the accident scene while shouting at the policemen and the onlookers. Despite orders to stop, Hurley continued riding toward Officer Wolny. They collided and Hurley was thrown off his bike, hit his head on the pavement and sustained severe injuries.

¶9 Several eyewitnesses who saw the accident filed written complaints with the police department about Officer Wolny's actions towards Hurly. As a result, the incident was referred to the Criminal Investigations Bureau of the Department of Justice to determine whether Wolny pushed Hurley off of the bike, or whether they simply collided causing Hurley to fall off his bicycle. CIB investigators conducted interviews with Officer Wolny and several other eyewitnesses. The investigators noticed several discrepancies between Wolny's account of the accident and the other witnesses. Furthermore, after a second interview, Wolny's story changed substantially from his first version.

¶10 The CIB investigators finished their investigation and sent their report to the County Attorney who declined to file any charges against Wolny. Mark Murphy, Assistant Attorney General, recommended that the file be sent to Mark Tymrak, Chief of the Bozeman Police Department, for a determination of whether Wolny's actions violated the Department's Use of Force and Personnel Policies. Thereafter, a three-member Use of Force review board convened to evaluate the incident. The review board concluded that the use of force by Wolny was not justified or appropriate based upon the totality of the circumstances.

¶11 In response, Chief Tymrak wrote a letter to Wolny on April 9, 1998, and explained that he was considering disciplinary action against Wolny up to and including discharge. He referred to the examples of inconsistent statements in the letter and provided Wolny with the CIB case file and the Use of Force Review Board report. Tymrak also provided an opportunity for Wolny to respond both orally and in writing. On April 16, Wolny responded by letter to Chief Tymrak and a disciplinary hearing was scheduled. At that hearing, Wolny submitted a report and a sketch diagram. Wolny stated that Dr. Lang, an accident expert, prepared the sketch. Dr. Lang also testified to his reconstruction of the accident based on his conversations with Wolny.

¶12 On May 15, 1998, Tymrak wrote Wolny a second letter notifying him that additional charges were being considered on the basis that he had provided false information regarding the sketch diagram. Wolny responded to his letter on May 19, 1998. A second disciplinary hearing was held. However, Wolny refused to answer any questions on the advice of counsel. The meeting ended and Tymrak wrote Wolny a third letter, ordering

that he come to Tymrak's office on May 22 and be prepared to answer the questions that Wolny had not answered during the hearing. Tymrak explicitly stated in the letter that this was a direct order and failure to obey it would amount to insubordination. Although Wolny arrived at his office with written answers, he refused to answer any questions orally.

¶13 On May 29, 1998, Tymrak informed Wolny of his decision to discharge him. Wolny appealed to the Police Commission. The Commission held a hearing that lasted for four days in October 1998. After listening to the witnesses and reviewing the exhibits, the Commission upheld the termination, finding that Wolny violated the Use of Force policy and the personnel policy and that he committed insubordination when he refused to answer Tymrak's questions. Wolny appealed this decision to the District Court. The Court affirmed the decision of the Commission.

## STANDARD OF REVIEW

¶14 A police commission is required to hear an appeal brought by a police officer "according to the rules of evidence applicable to courts of record in the state." A final decision of the police commission may be appealed to the district court which has jurisdiction to review all questions of fact and all questions of law. The function of the district court is to review the law to determine whether the rulings of the commission are correct and to review the facts to determine that they are supported by substantial evidence. *Matter of Raynes* (1985), 215 Mont. 484, 493, 698 P.2d 856; *Abbey v. City of Billings Police Commission* (1994), 268 Mont. 354, 886 P.2d 922. However, the district court should defer to the Commission unless findings of fact are clearly erroneous.

¶15 When the Supreme Court reviews such opinions, this court has applied the standard of review set out in § 2-4-704, MCA. The court may not substitute its judgment for that of the agency as to the weight of the evidence which supports findings of fact.

## DISCUSSION

## ISSUE ONE

¶16 Did the District Court err when it upheld the Commission's finding that Wolny received adequate notice of his alleged false or misleading statements?

¶17 Wolny was terminated as a police officer based in part on the City's belief that Wolny made false or misleading statements throughout the investigation. Wolny contends, however, that the City failed to provide him with adequate notice of the statements that the City considered false or misleading and, therefore, Wolny was unable to defend himself against the City's accusations.

¶18 The termination of a police officer requires compliance with fundamental due process rights which include notice to the employee and an explanation of the evidence against him as well as an opportunity to respond. *Boreen v. Christensen* (1994), 267 Mont. 405, 420, 884 P.2d 761, 770. *See also Cleveland Bd. of Ed. v. Loudermill* (1985), 470 U.S. 532, 544, 105 S.Ct. 1487, 1494.

¶19 According to the record, Chief Tymrak wrote Wolny a letter on April 9, 1998, notifying Wolny of the possible disciplinary actions and the charges that the City was considering. Tymrak cited several examples of Wolny's inconsistent and misleading statements and included the entire CIB file. On April 16, 1998, Wolny responded to Tymrak's letter and provided detailed explanations for the alleged misrepresentations.

¶20 Wolny contends that Chief Tymrak was unable to specify the exact false or misleading statements made and further contends that Tymrak's testimony during the Commission hearings further substantiates his argument. During the hearing, Tymrak was unable to identify particular statements that were false. However, it was clear from his testimony as it has been throughout these proceedings that Chief Tymrak believed that Wolny's account of his encounter with Hurley was inconsistent with the observations of other witnesses and inconsistent with his own statements.

¶21 The District Court found that Tymrak's termination letter of May 29, 1998, set forth his reasons for termination and referred to the April 9 and May 15 letters. The court provided that "clearly these letters and attached documents gave Wolny notice of the charges made against him."

¶22 We conclude that the District Court was correct in holding that the notice was adequate.

## ISSUE TWO

¶23 Did the District Court err when it concluded that the Police Commission properly

considered the testimony of Carolyn Thomas?

¶24 Wolny contends that the Police Commission discounted the testimony of Carolyn Thomas because it was in the form of deposition testimony. Wolny claims this was prejudicial to him because Thomas was in the best position to view the collision from her car and, of the witnesses, her testimony was most favorable to him.

¶25 Wolny points to the statements made by Police Commissioner Jim Drummond as evidence that the Commission did not give proper consideration to Thomas' testimony. During the hearing, Drummond stated that "[t]he account of Mr. Wolny differs from the four eyewitnesses but is similar to that of Miss Carol Thomas, who was closest to the scene. *Miss Thomas did not testify in person and was not available for cross-examination.*" Drummond's statement is incorrect. Thomas was cross-examined during her deposition and both attorneys were present.

¶26 However, we conclude there was no prejudice from Drummond's misunderstanding. The other two of the three Commissioners stated their conclusions before Drummond spoke and demonstrated no similar confusion. Moreover, Thomas' testimony was not entirely helpful for Wolny's case. She testified that Wolny questioned both her and another witness about the collision directly following the collision, which he denies. Furthermore, her description of the incident differed from his description.

¶27 According to the District Court, the Commission did, in fact, give weight to Thomas' testimony, citing their Findings of Fact numbered 6, 11, and 18 as based in part on her testimony. The District Court also found that:

> Each of the Commissioners discussed their individual findings about the use of force issue before Commissioner Drummond made his comment about Thomas. Although Commissioner Drummond may have been mistaken about the cross-examination of Thomas, there is no indication from the Commissioners' comments that the mistake had any influence on the findings of each Commissioner concerning the use of force charge.

¶28 We therefore conclude that the District Court was correct in finding that the Commission did not discount Carolyn Thomas' testimony.

## ISSUE THREE

¶29 Is the Police Commission's finding that Wolny was insubordinate supported by substantial evidence?

¶30 Wolny contends that insufficient evidence exists to support a finding of insubordination. The charge of insubordination arose from Wolny's refusal to answer Chief Tymrak's questions despite being warned in writing that any refusal to answer questions would be a violation of his direct order. Wolny argues that Tymrak did not articulate during the meeting that Wolny's failure to provide oral answers would result in a violation of Tymrak's order.

¶31 The record shows that during the May 20 hearing, Wolny specifically refused to answer any questions regarding Dr. Lang's sketch diagrams. Chief Tymrak wrote Wolny and ordered him to come to his office on May 22 to answer certain questions. Tymrak clarified in the letter that if Wolny should choose not to answer his questions, then Tymrak would consider that to be a violation of a direct order and insubordination.

¶32 Insubordination has been described as a "constant and continuing intentional refusal to obey a direct or implied order reasonable in nature and given by and with the proper authority." *Lockhart v. Board of Educ.* (Colo.Ct.App. 1986), 735 P.2d 913.

¶33 Employers have the right to compel their employees to answer questions which reasonably relate to the employee's fitness to perform duties or relate to their job performance. Furthermore, determination that insubordination has occurred presents a factual issue for the commission to decide. In Tymrak's letter to Wolny requesting his presence, he wrote that:

> [t]his is not a criminal case and whatever information you provide me which may be incriminating to yourself will not be used against you in any criminal proceeding. The Officer's Bill of Rights requires you to answer any questions regarding non-criminal matters under investigation. You are hereby ordered to answer the above questions. You must report to my office at 10:30 a.m. on Friday, May 22, 1998 to answer these questions. If you choose not to answer, I will make my decision based upon the information provided to date and I will treat the refusal as insubordination and a violation of a direct order.

¶34 The District Court states "in this case there was no uncertainty regarding Tymrak's order or the consequences of refusing that order . . . . There is sufficient evidence to

support the Commission's finding that Wolny was insubordinate." We agree with the District Court that Tymrak's intent was clear and that Wolny's refusal to answer questions amounted to insubordination. If written answers were all that was being requested, it would not have been necessary that Wolny report to Tymrak's office to provide them.

¶35 Therefore, we conclude that the District Court did not err in affirming the Commission's finding of insubordination.

## ISSUE FOUR

¶36 Did the District Court err when it concluded that the Commission properly excluded the disciplinary history of other officers?

¶37 The Police Commission excluded any evidence of previous police officer discipline as irrelevant to the hearing. Wolny objects to the exclusion of this evidence because the Commission has the power to modify the discipline imposed and, therefore, he contends that any evidence of previous disciplinary actions is relevant to the determination of whether Wolny's discipline was too severe. The standard of review for evidentiary rulings is whether the hearing officer abused his discretion. *Seizure of $23,691 in U.S. Currency* (1995), 273 Mont. 474, 479, 905 P.2d 148, 152.

¶38 We have held previously that a "review of the pertinent precedent shows that past conduct or action is never admissible as relevant in a case regarding a specific charge." *In the Matter of Raynes* (1985), 215 Mont. 484, 492, 698 P.2d 856, 861. Evidence of other disciplinary actions is not relevant to whether the actions of Officer Wolny justify the termination of his employment.

¶39 We conclude that the District Court did not err when it excluded evidence of past discipline of other officers.

## ISSUE FIVE

¶40 Does sufficient evidence exist to support the Commission's finding that the City complied with its progressive discipline policy when the City did not offer Wolny's personnel file at the hearing?

¶41 Chief Tymrak stated that termination was the only possible remedy under the City's progressive discipline policy. Wolny contends that there was insufficient evidence of this

fact because the City did not offer Wolny's personnel file as evidence or prove its adherence to the City's progressive discipline policy.

¶42 However, Wolny was not being terminated for his past actions, nor was the Police Commission summoned in order to rule on these past actions. Wolny was terminated from the police force based on his actions on October 10, 1997, and how he reacted once the investigation began. In Tymrak's letter to Wolny, terminating his employment, Tymrak stated that Wolny was being terminated for the following reasons: (1) Wolny was insubordinate when he refused to respond orally to Tymrak's questions; (2) Wolny violated the Use of Force Policy on October 10, 1997; (3) Wolny violated the Personal Conduct Introductory Provision, the Incompetence Policy and the Misrepresentation Policy of the Police Department Code of Conduct; and (4) Wolny violated the Employee Handbook, specifically the Employee Misconduct section.

¶43 Furthermore, the City's progressive discipline policy was offered into evidence and Wolny himself testified about prior disciplinary actions. Finally, failure to comply with the discipline policy was never made an issue at the Commission hearing.

¶44 We conclude that sufficient evidence exists to uphold the termination of David Wolny's employment with the City. We affirm the opinion and order of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ PATRICIA COTTER

Justice James C. Nelson specially concurs.

¶45 I concur in our opinion. I write separately as to one point only.

¶46 In ¶ 38 we quote *In the Matter of Raynes* (1985), 215 Mont. 484, 492, 698 P.2d 856, 861, that "[a] review of the pertinent precedent shows that past conduct or action is never admissible as relevant in a case regarding a specific charge." We did make precisely this statement in *Raynes*, and, as in the case at bar, we made it in response to Raynes' argument that he was entitled to obtain information concerning various disciplinary cases involving police officers other than himself. *Raynes*, 215 Mont. at 492, 698 P.2d at 861. Unfortunately, in *Raynes* we never cited the "pertinent precedent" which we had reviewed to support this purported statement of the law. In fact, we did not cite any authority at all in our discussion of this particular sub-issue.

¶47 That said, while it is true that in a disciplinary proceeding involving a particular police officer, the disciplinary histories of fellow police officers are not often relevant as evidence as held in *Raynes* and in this case,[1] I do not agree with the broad and imprecise statement in *Raynes* that "past conduct or action is never admissible as relevant in a case regarding a specific charge." Actually, the past conduct or actions of the officer being disciplined may well be quite relevant to the specific charge for which he is being prosecuted or disciplined, as was true in this case. Rule 404(b), M.R.Evid., in fact, allows precisely this type of evidence for some purposes and under appropriate circumstances.

¶48 Accordingly, with that clarification of my vote, I concur.

/S/ JAMES C. NELSON

Justices Patricia O. Cotter, W. William Leaphart, and Jim Regnier concur in the foregoing special concurrence.

/S/ PATRICIA COTTER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

1. I have not separately researched the issue of when employer conduct toward other, uninvolved employees is relevant in a disciplinary proceeding, and do not, therefore, know when it is ever admissible as evidence in such a proceeding. Disciplinary proceedings cannot be turned into wide ranging investigations of agency practice and exposure of unrelated disciplinary actions against other employees without some indication of relevance as required by the Montana Rules of Evidence. Rule

401, M.R.Evid. Therefore, I agree that the Police Commission and District Court did not abuse discretion in excluding the evidence. In any event, Wolny did not cite any authority supporting his argument that fellow police officers' disciplinary histories were relevant to his case, and the City relied on *Raynes*. Thus, as far as I am concerned, Wolny did not meet his initial burden of persuasion on this issue, nor did he rebut the City's argument. Rule 23(a)(4), M.R.App.P.