No. 96-696

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

BRIAN PARINI,

       Plaintiff and Appellant,

    v.

MISSOULA COUNTY HIGH SCHOOL, DISTRICT NO. 1,  and the
following agents/employees, MIKE FREDRICKSON, MARK WRIGHT,
NICK CARTER, JAY CHRISTOPHER, GINGER BILILE, JERRY
PEASE, DICK GUILIANI, ROD BATES, TONY MARINO,
LORA MEHRER, TEDDY MALOOF, and JOHN FREDERIKSON,

       Defendants & Respondents.

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Mark E. Jones, Attorney at Law, Missoula, Montana

      For Respondents:

          Molly Shepherd; Worden, Thane & Haines;
          Missoula, Montana

                     Submitted on Briefs: May 1, 1997

                          Decided:   July 3, 1997

Filed:

_____
                    Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The appellant, Brian Parini, filed a complaint in the District Court for the Fourth Judicial District in Missoula County in which he: (1) appealed the Office of Public Instruction's determination that he was not denied a free appropriate public education; and (2) asserted an independent claim in which he alleged that the respondents, Missoula County High School District No. 1 and twelve of its employees, negligently misplaced and misdiagnosed him as a special education student. The District Court affirmed the Office of Public Instruction's decision and dismissed the negligent misplacement and misdiagnosis claim. Parini appeals. We affirm the judgment of the District Court.

The following issues are presented on appeal:

1. Did the District Court err when it affirmed the Office of Public Instruction's determination that Brian Parini was not denied a free appropriate public education?

2. Did the District Court err when it dismissed Brian Parini's negligent misdiagnosis and misplacement claim?

## FACTUAL BACKGROUND

In 1989, when he was in the seventh grade, Brian Parini was diagnosed with a learning disability. He had previously been diagnosed with Attention Deficit Disorder. On that basis, school officials determined that he was eligible for special education services pursuant to the Individuals with Disabilities Education Act (IDEA).

The IDEA provides that disabled children are entitled to receive a free appropriate public education ("FAPE"), see 20 U.S.C. 1400(c); mandates that an individualized education plan ("IEP") be formulated for each eligible child, see 20 U.S.C. 1401(a)(18)(D); and sets forth procedural safeguards and remedial provisions to ensure that disabled children receive adequate educational opportunities, see 20 U.S.C. 1415.

In 1994, Rose Parini, Brian's mother, filed a petition with the Office of Public Instruction ("OPI") pursuant to the IDEA. The petition alleged that school officials failed to properly test and evaluate Brian and that, as a result, he was denied a FAPE. After a due process hearing, however, the OPI determined that he was not denied a FAPE.

Parini subsequently filed a complaint in the District Court in which he: (1) appealed the OPI's decision; and (2) asserted an independent cause of action in which he alleged that the School District and twelve of its employees negligently misdiagnosed and misplaced him as a special education student. He claimed, therefore, that he is entitled to relief pursuant to the IDEA's remedial provisions and to compensatory damages. The District Court dismissed Parini's negligent misdiagnosis and misplacement claim and affirmed the OPI's decision.

## ISSUE 1

Did the District Court err when it affirmed the Office of Public Instruction's determination that Brian Parini was not denied a free appropriate public education?

Rose Parini filed a petition with the OPI in which she contended that Brian was denied a FAPE. After an extensive hearing, the OPI concluded that the "IDEA does not require a school district to maximize the potential of a child with a disability but only to assure that the child receives an appropriate education reasonably calculated to enable him or her to receive educational benefit." Additionally, the OPI made the following findings:

7. The absence of a complete three-year comprehensive re-evaluation of [Brian] constitutes a procedural flaw or inadequacy under IDEA. [Brian's] own conduct is likely to have caused or contributed to the inadequacy.

8. The absence of a . . . re-evaluation did not result in [Brian's] loss of educational opportunity. His IEP's continued to be constructed on informed, particularized assessments of his needs, abilities and performance. The October 1993 WORC Center evaluation and the July 1994 evaluation of Dr. Wollersheim establish that no causal link exists between the absence of the re-evaluation and the educational opportunity afforded [Brian]. There is no evidence that his IEP's would have been constructed differently if a complete three-year re-evaluation had been conducted in 1991-1992.

9. The absence of a . . . re-evaluation also did not materially infringe upon [Rose Parini's] opportunity to participate in the process of formulating IEP's for [Brian]. With the assistance of experts, advocates and attorneys, as well as her own extensive research, she has played a pivotal role in the development of [Brian's] IEP's. In particular, she and [Brian's] advocate were instrumental in formulating the November 30, 1993 IEP . . . .

On that basis, the OPI determined that Parini received an educational benefit and that, therefore, the School District did not deny him a FAPE.

Parini subsequently appealed the OPI's decision to the District Court. The court determined that it "can set aside OPI's ruling only after giving due weight to the administrative disposition and finding the aggrieved party has proved by a preponderance of the evidence the administrative disposition was erroneous." After a hearing, the court made the following findings and conclusions:

[Brian] contends that the School District failed to provide a FAPE because it did not complete a comprehensive evaluation. The School District argues that evaluations were not completed because [Brian] was uncooperative. Although [Brian] argues that placing him with emotionally disturbed students denied him a FAPE, there is no evidence to support this claim. The preponderance of the evidence shows that the School District made numerous good faith efforts to create an IEP for Brian, but members of the team were never able to come to an agreement with [Brian and Rose]. Moreover, the testimony at the administrative hearing showed that [Brian] received 'some education benefit', which is the substantive standard for FAPE. Alamo Heights Indep. School Dist. v. State Bd. of Educ., 790 F.2d 1153 (5th Cir. 1986). The preponderance of the evidence also shows

[Rose] participated extensively in the IEP formulation process. Therefore, [Brian] has failed to show that the administrative disposition was erroneous.

Parini maintains that the District Court erred when it affirmed the OPI's decision. On appeal to this Court, he claims, as he did before the District Court, that the School District: (1) failed to properly test and evaluate him; (2) improperly placed him with emotionally disturbed students; and (3) failed to administer a comprehensive three-year evaluation pursuant to 20 U.S.C. 1412(5)(C) and 34 C.F.R. 300.534. On that basis, he asserts that he was denied a FAPE.

The IDEA entitles disabled children to a FAPE. See 20 U.S.C. 1400(c). According to the United States Supreme Court, a FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." Board of Educ. of Hendrick Hudson Central School Dist. v. Rowley (1982), 458 U.S. 176, 188-89, 102 S. Ct. 3034, 3042, 73 L. Ed. 2d 690, 701. Moreover, the Court concluded that the IDEA does not obligate a state to maximize each disabled child's potential; rather, the IDEA requires a "basic floor of opportunity," "sufficient to confer some educational benefit upon the handicapped child." Rowley, 458 U.S. at 200-01.

The IDEA's "basic floor of opportunity" is achieved for each individual child through: (1) the completion of an evaluation every three years pursuant to 20 U.S.C. 1412(5)(C) and 34 C.F.R. 300.534; and (2) the establishment of an IEP pursuant to 20 U.S.C. 1401(a)(18)(D). An IEP is a written plan which incorporates the placement decisions made by the child's IEP team of school authorities, the child's parents, and other knowledgeable persons. See 20 U.S.C. 1401(a)(20). Additionally, Congress devised procedural safeguards and remedial provisions to ensure full parental participation and the proper resolution of substantive disagreements. See 20 U.S.C. 1415.

Furthermore, the IDEA, specifically 20 U.S.C. 1415(e), governs judicial review of the OPI's decisions:

> (1) A decision made in a [due process] hearing conducted [by a state educational agency] shall be final, except that any party involved in such hearing may appeal such decision under the provisions of . . . paragraph (2) of this subsection . . . .

> (2) Any party aggrieved by the findings and decision made [in a due process hearing conducted by a state educational agency] . . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction . . . . In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the

preponderance of the evidence, shall grant such relief as the court determines is appropriate.

In Rowley, the Supreme Court interpreted 20 U.S.C. 1415(e), and concluded that reviewing courts are required to engage in the following two-part inquiry:

First, has the State complied with the procedures set forth in [IDEA]? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

Rowley, 458 U.S. at 206-07; see also Town of Burlington v. Department of Educ. (1st Cir. 1984), 736 F.2d 773, 788 ("[t]he ultimate question for a court under the Act is whether a proposed IEP is adequate and appropriate for a particular child at a given point in time").

Federal case law recognizes, and Parini concedes in his brief, that procedural flaws in the development of an IEP do not necessarily require a finding that a disabled child has been denied a FAPE. See, e.g., Independent Sch. Dist. No. 283 v. S.D. (8th Cir. 1996), 88 F.3d 556, 562. Rather, a FAPE is denied when procedural flaws result in the disabled child's loss of an educational opportunity or seriously infringe a parent's opportunity to participate in the process of formulating the IEP. See W.G. v. Board of Trustees of Target Range Sch. Dist. (9th Cir. 1992), 960 F.2d 1479, 1484; Burke County Bd. of Educ. v. Denton (4th Cir. 1990), 895 F.2d 973, 982; Roland M. v. Concord Sch. Comm. (1st Cir. 1990), 910 F.2d 983, 994.

The Supreme Court, in Rowley, concluded that judicial review of actions filed pursuant to the IDEA includes a substantive review and, therefore, is not limited to the issue of whether a state has complied with the IDEA's procedural requirements. The Court, however, rejected the proposition that the IDEA confers upon courts broad powers to disturb the placement and policy decisions made by state and local school officials:

[T]he provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.

Rowley, 458 U.S. at 206. The Court also recognized that 20 U.S.C. 1415(e) requires a reviewing court to receive the records of the underlying administrative proceeding and, on that basis, concluded that Congress intended that "due weight" be given to the administrative proceeding. Rowley, 458 U.S. at 206. Additionally, the party who challenges an administrative decision in an IDEA action bears the burden of proving by a preponderance of the evidence that the decision is erroneous. See Board of Educ. of

Murphysboro v. Illinois Bd. of Educ. (7th Cir. 1994), 41 F.3d 1162, 1167.

Therefore, when an appellate court reviews a lower court's findings of fact in an IDEA action, the appellate court is required to uphold those findings unless they are clearly erroneous.  Yankton Sch. Dist. v. Schramm (8th Cir. 1996), 93 F.3d 1369, 1374; Light v. Parkway C-2 Sch. Dist. (8th Cir. 1994), 41 F.3d 1223, 1229. When an appellate court reviews a lower court's conclusions of law in an IDEA action, the standard of review is whether those conclusions are correct.  Seattle Sch. Dist. No. 1 v. B.S. (9th Cir. 1996), 82 F.3d 1493, 1499.After a review of the record, we conclude that, based on the aforementioned legal principles and the application of those principles to the facts of this case, the District Court's findings of fact are not clearly erroneous and its conclusions of law are correct.  Accordingly, we hold that the District Court did not err when it affirmed the OPI's determination that Brian Parini was not denied a free appropriate public education.

ISSUE 2

Did the District Court err when it dismissed Brian Parini's negligent misdiagnosis and misplacement claim?

When we review a district court's conclusions of law, the standard of review is whether those conclusions are correct.  Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.  Additionally, it is well established that if a district court reaches the correct result, then we will uphold the court's judgment regardless of the reasons for its decision.  Robinson v. First Wyoming Bank (1995), 274 Mont. 307, 319, 909 P.2d 689, 696.

Parini's complaint, filed in the District Court, not only appealed the OPI's decision, but also asserted an independent claim in which he alleged that the School District and twelve of its employees negligently misdiagnosed and misplaced him as a special education student.  On that basis, he maintained that he is entitled to compensatory damages.

The defendants, however, filed a motion to dismiss Parini's claim.  In its April 10, 1996, order, the District Court concluded that:

> The issue of whether a disabled child can sue under Negligent Misplacement and Diagnosis has not been brought before the Montana Supreme Court since IDEA was enacted.  Evaluation and placement are covered by IDEA and should be addressed under procedures provided by IDEA, not in an independent tort action entitled Negligent Misplacement and Diagnosis.

On that basis, the District Court granted the defendants' motion and, accordingly, dismissed Parini's negligent misdiagnosis and misplacement claim.

On appeal, Parini contends that the District Court erred when it dismissed his claim.  In support of this contention, he relies on our prior decision in B.M. v. State

(1982), 200 Mont. 58, 649 P.2d 425.

In B.M., the plaintiff filed a complaint in which she alleged that the State negligently placed her in a special education program.  The District Court, however, determined that the State does not owe a legal duty of care to students placed in special education programs and, on that basis, granted summary judgment in favor of the State.

On appeal, we reversed the District Court and concluded that the State does have a duty to use due care when it places students in special education programs.  B.M., 200 Mont. at 63, 649 P.2d at 427.  We based our conclusion on Article X, Section 1, of the Montana Constitution, which provides:

> It is the goal of the people to establish a system of education which will develop the full educational potential of each person.  Equality of educational opportunity is guaranteed to each person of the state.

The School District, however, points out that the cause of action in B.M. accrued in 1973, two years before Congress enacted the Education for All Handicapped Children Act (now titled IDEA), and that, therefore, we did not consider the IDEA's procedural safeguards and remedial provisions when we decided B.M.

We recognize that the IDEA sets forth comprehensive procedural safeguards and remedial provisions through which an aggrieved child and his or her parents can seek redress for alleged violations of the Act.  However, we conclude that pursuant to our decision in B.M., and Article X, Section 1, of the Montana Constitution, a private cause of action against the State for its negligent misdiagnosis or misplacement of a special education student remains viable in Montana. Accordingly, we  further conclude that Parini is entitled, pursuant to Montana law, to bring an independent tort claim against the School District for its alleged negligent misdiagnosis and misplacement of him as a special education student.

However, that conclusion does not resolve this issue. Parini asserted his negligent misdiagnosis and misplacement claim after the OPI had already decided that the School District did not deny him a FAPE.  Moreover, the OPI's decision was affirmed by the District Court, and now this Court on appeal.

The doctrine of res judicata bars the relitigation of a claim once a final judgment has been entered.  Holtman v. 4-G's Plumbing and Heating, Inc. (1994), 264 Mont. 432, 436, 872 P.2d 318, 320.  Finality is accorded to the disposition of all issues that were raised or that could have been raised; a party, therefore, is prohibited from relitigating a claim that he or she has already had an opportunity to litigate.  Traders State Bank v. Mann (1993), 258 Mont. 226, 238, 852 P.2d 604, 611.  The following four elements must be satisfied in order to apply the doctrine of res judicata: (1) the parties or their privies must be the same; (2) the subject matter of the action must be the same; (3)

the issues must be the same and relate to the same subject matter; and (4) the capacities of the persons must be the same in reference to the subject matter and to the issues. Holtman, 264 Mont. at 436, 872 P.2d at 320.

We conclude that all four elements are satisfied in the underlying OPI and District Court actions. Furthermore, as stated by the Eighth Circuit Court of Appeals in S. D., "[w]hen that process [exhaustion of administrative remedies pursuant to 20 U.S.C. 1415(f)] produces an administrative decision that is upheld on judicial review under IDEA, principles of issue and claim preclusion may properly be applied to short-circuit redundant claims under other laws." S.D., 88 F.3d at 562 (citations omitted).

We conclude that, in this case, therefore, the doctrine of res judicata bars Parini from litigating his negligent misdiagnosis and misplacement claim. Accordingly, we hold that the District Court did not err when it dismissed his claim.

The judgment of the District Court is affirmed.

/S/  TERRY N. TRIEWEILER

We Concur:

/S/  J. A.  TURNAGE
/S/  JIM REGNIER
/S/  WILLIAM E. HUNT, SR.


Justice Karla M. Gray specially concurring.

I concur in the Court's opinion on issue one and specially concur in that opinion on issue two.

I agree that an independent cause of action for negligent misdiagnosis and misplacement of a special education student remains viable in Montana. While the IDEA sets forth comprehensive procedural safeguards and remedial provisions for alleged violations of that Act, it is not inconceivable that an action in tort could allege and prove negligence separate from, and not coextensive with, conduct which would violate the specific federal requirements contained in the IDEA. To the extent any such negligence caused damage to a special education student, that student should be entitled to recover. It is my view, however, that most IDEA-based cases will involve the same conduct as would be alleged under an independent tort action and, to that extent, I would hope that special education students continue to assert IDEA claims, in order to ensure that they receive the education required by the IDEA which is so critical to their futures,

rather than independent tort actions in which monetary recovery ordinarily would be a poor substitute for a more appropriate education provided in a timely fashion.

I also agree with the Court that, under the circumstances of this case, res judicata bars Parini from litigating his independent cause of action. This is so because--while the Court does not expressly state it--Parini alleged the same underlying facts and issues with regard to his IDEA claim as he alleged in his independent cause of action. Once he failed to prevail on those facts and issues--here, in the IDEA claim at the OPI which was affirmed by the District Court and now by this Court--that final judgment is res judicata as to any further litigation on the same issues. As I understand the Court's opinion, the same result would have obtained had Parini failed to seek judicial review of the adverse OPI decision and, instead, simply filed his independent action. In that event, the OPI decision would have become final without judicial review and res judicata would bar litigation of the tort action because the issues had been raised and a final decision rendered.

I join the Court in affirming the District Court.

/S/  KARLA M. GRAY