DA 11-0344

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 149

ARTHUR F. ROONEY,

      Plaintiff, Appellant, and Cross-Appellee,

  v.

CITY OF CUT BANK,

      Defendant, Appellee, and Cross-Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
                    In and For the County of Glacier, Cause No. DV 08-56
                    Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Linda Deola; Morrison, Motl & Sherwood, PLLP; Helena, Montana

      For Appellee:

          Kevin C. Meek, Jordan Y. Crosby; Ugrin, Alexander, Zadick &
          Higgins, P.C.; Great Falls, Montana

                         Submitted on Briefs:  April 5, 2012

                                   Decided:  July 10, 2012

Filed:

                             _____
                                      Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 The Ninth Judicial District Court, Glacier County, entered judgment for the City of Cut Bank on Arthur F. Rooney's complaint that he was wrongfully terminated from employment as a City police officer. Rooney appeals the court's decision that his termination did not violate Montana's Wrongful Discharge From Employment Act (WDEA). The City cross-appeals the District Court's earlier interlocutory order denying the City's motion to dismiss the WDEA claim. Because we reverse the interlocutory ruling, we do not reach the issues raised by Rooney, but affirm the District Court's judgment in favor of the City on this alternative ground.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 Rooney worked for eight years with the City's police department, where he attained the rank of captain and senior officer. In the early morning hours of December 1, 2007, two junior officers observed Rooney apparently sleeping in his patrol car while on duty. They notified the City's Chief of Police of what they had observed. After investigating, the Chief recommended to the City's Mayor that Rooney's employment be terminated. The Mayor terminated Rooney's employment.

¶3 Rooney then appealed to the City's Police Commission pursuant to § 7-32-4155, MCA. The Police Commission held an evidentiary hearing at which Rooney represented himself. The Commission took judicial notice that sleeping on duty is considered neglect of duty under the Cut Bank Police Department Rules of Conduct and that violations of Cut Bank Police Department policies and procedures, with which officers are required to

2

be familiar, may result in disciplinary action up to and including termination of employment.

¶4     The two junior officers who reported observing Rooney sleeping testified that they saw him sitting in his patrol car parked on a city street, with his head laid back against the headrest, his eyes shut, and his mouth partly open. They circled around the block and proceeded back to Rooney's location, sounding their patrol car's air horn as they approached. They then pulled up adjacent to Rooney's car, where he appeared still to be sleeping. They did not stop. Several minutes later, they heard Rooney checking in with dispatch on his police radio and saying he was going home.

¶5     Cut Bank Chief of Police Jason Abbott testified that he conducted an internal investigation of the two junior officers' report. During that investigation, Rooney admitted to Abbott that he may have dozed off a little, as a result of taking sinus medication that night and also running the patrol car's heater. Abbott testified that Rooney had not previously reported being sick or any problems with the police car or its heater. Another deputy told Abbott he had observed Rooney dozing on duty the evening after the two junior officers observed him. Prior to these incidents, Rooney had seven unrelated disciplinary actions for deficiencies such as not responding to calls and spending time at home while on assigned duty shifts.

¶6     Both Chief Abbott and the Mayor of the City of Cut Bank testified that termination was an appropriate disciplinary action for Rooney's sleeping on the job, taking into consideration Rooney's personnel history and his supervisory role in a police department in which the majority of the officers were rookies. Abbott testified that, in

3

light of those factors, he did not view demotion or suspension as viable disciplinary alternatives. Rooney's entire personnel file, which also included twelve letters of commendation, was introduced into evidence.

¶7 Two Bell Motor Company employees testified on Rooney's behalf. They told the Police Commission that, on January 11, 2008, they serviced the patrol car Rooney had used before he was terminated and discovered an exhaust leak in it. Their last prior servicing of the vehicle had been in November of 2007. Both Bell Motor Company employees testified they could not say whether the leak would have resulted in exhaust fumes in the car.

¶8 Rooney also presented testimony by Cut Bank Police Officer Tim Seifert, who had used Rooney's patrol car after Rooney was terminated. Seifert testified there were several mornings when he had trouble staying awake while using the car, during which he could smell a slight odor of exhaust.

¶9 The Police Commission concluded substantial evidence supported the Mayor's decision to terminate Rooney's employment. In its written findings, conclusions, and order, the Police Commission stated it would have preferred a more incremental approach to discipline of Rooney, such as a suspension from duty, education or counseling, or an improvement plan. However, the Police Commission concluded there was substantial evidence that Rooney committed acts that constituted neglect of duty as a Cut Bank police officer and that substantial evidence had been provided to support the appropriateness of the disciplinary action taken against Rooney.

4

¶10 Rooney then filed the present, two-count action in the District Court. He asserted a claim of wrongful discharge under the WDEA and, in the alternative, sought judicial review of the Police Commission's decision by the District Court as allowed under § 7-32-4164(2), MCA. The judicial review claim proceeded first, following the filing of Rooney's opening brief in support of his appeal. The City filed a brief in which it argued (1) substantial evidence supported the Police Commission's findings and conclusions, which should therefore be affirmed, and (2) Rooney's discharge was statutorily exempt from the WDEA under § 39-2-912, MCA, because of the availability of the statutory police commission remedy. Rooney filed a response. The District Court affirmed the Police Commission's decision based on the briefing. The court held, however, that Rooney's WDEA claim was distinct from the appeal of the Police Commission decision, and it denied the City's motion to dismiss the WDEA count of the complaint.

¶11 The City then filed a motion for relief from the District Court's order, in which it argued the WDEA claim should be dismissed under the doctrine of issue preclusion. The District Court denied that motion, and the WDEA claim eventually proceeded to bench trial. After trial, the District Court entered findings, conclusions, and judgment that Rooney's discharge was not wrongful under the WDEA.

¶12 Rooney appeals, and the City cross-appeals. As noted, because the issue raised by the City on cross-appeal is dispositive, that is the only issue we address.

**STANDARD OF REVIEW**

¶13 We review de novo a district court's decision on a motion to dismiss. *Grizzly Sec. Armored Express, Inc. v. Armored Group, LLC*, 2011 MT 128, ¶ 12, 360 Mont. 517, 255

5

P.3d 143. A motion to dismiss must be construed in the light most favorable to the plaintiff. *Grizzly Sec.*, ¶ 12.

## DISCUSSION

¶14 *Did the District Court err in denying the City's motion to dismiss the WDEA claim?*

¶15 The City first argues that Rooney's discharge is exempt from the WDEA under the WDEA's own terms, because another statutory remedy was prescribed—under the police commission statutes—for Rooney's wrongful termination. *See* § 39-2-912, MCA. Rooney claims that, unlike the WDEA statutes, the police commission statutes provide no potential remedy of an award for lost wages. He argues that the police commission process is not an exclusive remedy for an officer claiming wrongful discharge.

¶16 This Court has recognized that once a police officer completes his probationary period of employment, the officer benefits from the protections of the WDEA and may bring a wrongful discharge suit. *Ritchie v. Town of Ennis*, 2004 MT 43, ¶ 25, 320 Mont. 94, 86 P.3d 11. While § 7-32-4164, MCA, extends to police officers the "right to appeal" their discharge by the mayor, nothing in the police commission statutes makes appeal to the police commission the sole remedy for a police officer's alleged wrongful discharge. We have not viewed the police commission statutes as exclusive of the WDEA, but have recognized that both apply to the employment of police officers. *Hobbs v. City of Thompson Falls*, 2000 MT 336, ¶¶ 17-18, 303 Mont. 140, 15 P.3d 418; *Ritchie*, ¶ 25. This does not, however, conclude the analysis. The City further argues that, even if the WDEA afforded relief to Rooney, his WDEA claim is barred by res judicata and

6

collateral estoppel following the District Court's upholding of the Police Commission's order on judicial review. We agree.

¶17 Issue preclusion and claim preclusion—also known as collateral estoppel and res judicata, respectively—bar a party from re-litigating an issue that already has been litigated and decided in a prior suit. We apply a four-element test to determine whether re-litigation of an issue is barred:

> 1. Was the issue decided in the prior adjudication identical to the issue raised in the action in question?
>
> 2. Was there a final judgment on the merits in the prior adjudication?
>
> 3. Was the party against whom preclusion is asserted a party or in privity with a party to the prior adjudication?
>
> 4. Was the party against whom preclusion is asserted afforded a full and fair opportunity to litigate the issue that may be barred?

*McDaniel v. State*, 2009 MT 159, ¶ 28, 350 Mont. 422, 208 P.3d 817. Preclusion extends to all questions essential to a judgment and actively determined by a prior valid judgment. It bars re-litigation of determinative facts that were actually or necessarily decided in a prior action, even if they were previously decided under a different legal theory. *Rafanelli v. Dale*, 1998 MT 331, ¶¶ 12, 14, 292 Mont. 277, 971 P.2d 371. When the exhaustion of administrative remedies produces an administrative decision that is upheld on judicial review, principles of issue and claim preclusion properly may be applied to redundant claims made under other laws. *Parini v. Missoula County High Sch. Dist.*, 284 Mont. 14, 23, 944 P.2d 199, 204 (1997).

7

¶18    Rooney does not deny that the third element of preclusion is established, because the parties are identical. He raises several arguments, however, relating to the first, second, and fourth elements: whether the issues were identical, whether a final judgment was entered on the merits in the Police Commission matter, and whether he has been afforded a full and fair opportunity to litigate the issues.

¶19    Under the police commission statutes, a Montana police officer is entitled to challenge employment issues, including termination. *See* § 7-32-4155(1), MCA. Proceedings before a police commission are subject to the rules of evidence for courts of record. Section 7-32-4155(2), MCA. The police officer has the right to be present at the hearing in person and by counsel, and to present evidence. Section 7-32-4157, MCA. The police commission exists, in part, to "provid[e] a means for an appointed officer to actually retain his or her position of employment or avoid unreasonable supervisory decisions." *Ritchie*, ¶ 23. A police commission has the power to "sustain, modify, or overrule the disciplinary order." Section 7-32-4160, MCA. The police officer has a right to appeal the police commission's decision to the district court, which "has jurisdiction to review all questions of fact and all questions of law." Section 7-32-4164(2), MCA. On judicial review, "[t]he function of the district court is to review the law to determine whether the rulings of the commission are correct and to review the facts to determine that they are supported by substantial evidence." *Wolny v. City of Bozeman*, 2001 MT 166, ¶ 14, 306 Mont. 137, 30 P.3d 1085.

¶20    Rooney's complaint in the District Court asserted that he was terminated in retaliation for reporting the Mayor's failure to handle criminal justice information

8

correctly. At the bench trial on his WDEA claim, he also introduced evidence that the City had been inconsistent and applied a double standard in applying discipline as between him and former Cut Bank Chief of Police Murray. Rooney contends, and the District Court agreed, that these claims were not part of the Police Commission proceedings.

¶21 If a new legal theory or factual assertion in an action is related to the subject matter of a prior action and is relevant to the issues that were litigated and adjudicated in the prior action, "so that it *could* have been raised," then the judgment in the first action is conclusive as to that legal theory or factual assertion, despite the fact that the theory or assertion was not expressly pleaded or otherwise urged. *McDaniel*, ¶ 33 (emphasis in original). Rooney did not raise his retaliation and double standard claims before the Police Commission and has shown no legal reason why he could not have done so, given the Commission's broad authority to review an officer's discipline. We conclude that Rooney's failure to present those theories to the Police Commission did not prevent the District Court from giving preclusive effect to the Police Commission's decision regarding the propriety of his termination.

¶22 Rooney points out that the issue decided by the Police Commission was whether substantial evidence supported termination of his employment, as distinguished from whether there was good cause to terminate him. However, we have held that the good cause provisions of the WDEA are applicable to any termination of a non-probationary police officer. *See Hobbs*, ¶¶ 17-18. The District Court expressly determined that substantial evidence was presented supporting Rooney's termination for neglect of duty.

9

By upholding the Police Commission's decision, the District Court decided the determinative facts underlying the issue of good cause for Rooney's termination. *See Rafanelli*, ¶ 12.

¶23 Finally, Rooney argues that the Police Commission did not enter a judgment on his claim. While the Police Commission did not enter a judgment, the District Court did, when it affirmed the Police Commission's decision. Rooney chose not to appeal the District Court's ruling affirming the Police Commission's decision. In a comparable situation in *Parini*, we affirmed a district court's dismissal of a student's claim that he had been misdiagnosed and placed as a special education student. We ruled that re-litigation was barred by principles of res judicata, because the claim already had been rejected in administrative proceedings before the Office of Public Instruction, which had then been judicially affirmed. *Parini*, 284 Mont. at 23, 944 P.2d at 204-05. Thus, where, as here, the officer seeks judicial review of the police commission's decision and the court upholds the discharge, principles of issue and claim preclusion bar further litigation of the same or redundant claims.

## CONCLUSION

¶24 Rooney took advantage of the statutory police commission process, including the hearing before the Police Commission at which he cross-examined the City's witnesses and presented evidence on his own behalf. The issue in the Police Commission decision was identical to the key issue in Rooney's WDEA claim: namely, whether the City wrongfully terminated Rooney's employment with the Cut Bank Police Department. Rooney did not appeal the District Court's ruling on judicial review of the Police

10

Commission's decision. We conclude that Rooney was afforded full and fair adjudication of his claims in the proceedings before the Police Commission. When the City moved for relief from the District Court's order ruling that the WDEA claim was distinct from the appeal of the Police Commission decision, it was correct that issue preclusion applied.

¶25 Rooney's WDEA claim should have been dismissed because the issues already had been determined in the proceedings before the Police Commission, which decision the District Court affirmed. We may uphold a judgment on any basis supported by the record, even if the district court applied a different rationale. *See e.g. Parini*, 284 Mont. at 21-22, 944 P.2d at 203.

¶26 The District Court's judgment in favor of the City is affirmed.


/S/ BETH BAKER


We concur:


/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE