FILED

11/07/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0656

DA 22-0656

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 209

SUMMER STRICKER, Personal Representative
of the Estate of ALLEN J. LONGSOLDIER, JR.,

      Plaintiff and Appellant,

  v.

BLAINE COUNTY and HILL COUNTY,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDV-12-0937
Honorable Matthew Cuffe, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Patrick F. Flaherty, Daniel J. Flaherty, Paul Gallardo, Flaherty Gallardo
Lawyers, Great Falls, Montana

      For Appellee Blaine County:

            Mark F. Higgins, Jennifer A. Morgan, County Litigation Group, Helena,
Montana

      For Appellee Hill County:

            Maureen H. Lennon, Molenda L. McCarty, County Litigation Group,
Helena, Montana

Submitted on Briefs:  August 16, 2023

Decided:  November 7, 2023

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 This is the third appeal arising from the 2009 death of A. J. Longsoldier, Jr., while in the custody of Hill County, Montana. In the first appeal, we affirmed an administrative hearing officer's determination that neither Hill County nor Blaine County—where Longsoldier was arrested—discriminated against him on the basis of race or disability. *Blaine Cty. v. Stricker*, 2017 MT 80, ¶¶ 6, 11, 41, 387 Mont. 202, 394 P.3d 159 (*Stricker I*). In the second appeal, we reversed a district court ruling that Hill County could be held vicariously liable for the negligence of Northern Montana Hospital, where Longsoldier was treated during his detention. *Stricker v. Blaine Cty.*, 2019 MT 280, ¶¶ 18-19, 398 Mont. 43, 453 P.3d 897 (*Stricker II*). Now, Longsoldier's Estate appeals the Eighth Judicial District Court's rulings granting both Counties summary judgment on the Estate's standalone claims of negligence and denying its cross-motion for partial summary judgment on liability. We reverse the District Court's determination that the Estate's negligence claim against Hill County is barred by principles of issue preclusion. We also reverse the court's ruling that the Estate may not pursue a negligence claim against Blaine County because Hill County had assumed responsibility for Longsoldier's custody and care. We affirm the District Court's denial of the Estate's motion for partial summary judgment on liability and remand the case for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 The extensive background of the circumstances leading to the present dispute has been set forth in *Stricker I* and *Stricker II*. The facts and procedural history are not repeated here except as necessary to resolve this appeal.

¶3    A Blaine County sheriff's deputy arrested Longsoldier on the morning of November 19, 2009. *Stricker I*, ¶ 6. The deputy transported Longsoldier to the Hill County Detention Center, where Blaine County's adult prisoners are held pursuant to an agreement between the Counties. *Stricker I*, ¶ 6. Longsoldier started experiencing symptoms of delirium tremens, or alcohol withdrawal syndrome, at the Detention Center. *Stricker I*, ¶ 7. On the evening of November 21, Hill County notified Blaine County that Longsoldier had not slept for three days, was hallucinating, was involuntarily detoxing, and needed to be transported to the Northern Montana Hospital for treatment. *Stricker II*, ¶ 3. A Blaine County sheriff's deputy went to the Detention Center and transported Longsoldier to the Hospital on November 21, at approximately 7:00 p.m. *Stricker I*, ¶ 8.

¶4    A doctor at the Hospital examined Longsoldier and gave him several medications but failed to diagnose Longsoldier's alcohol withdrawal syndrome. *Stricker I*, ¶ 8. The Hospital discharged Longsoldier with prescriptions for Cymbalta and Ativan but did not provide the six Ativan tablets the doctor ordered; the prescriptions were never filled. *Stricker I*, ¶ 8. Longsoldier returned to the Detention Center around 9:00 p.m. *Stricker I*, ¶ 8.

¶5    Shortly after Longsoldier returned from the Hospital, his condition worsened. *Stricker I*, ¶ 9. At around 2:30 a.m. on November 22, Hill County again called Blaine County authorities and requested that Longsoldier be returned to the Hospital for further treatment. *Stricker II*, ¶ 5. After speaking with a Hospital nurse, the Blaine County dispatcher advised the Detention Center there was nothing more the Hospital could do; Blaine County thus did not return Longsoldier to the Hospital. *Stricker I*, ¶ 6;

*Stricker II*, ¶ 5. The Detention Center later had an ambulance transport the worsening Longsoldier to the Hospital, where he died from delirium tremens around 2:00 a.m. on November 23. *Stricker I*, ¶ 10.

¶6 The Estate first filed a claim against the Counties and the Hospital with the Montana Human Rights Bureau (MHRB), alleging that the Counties and the Hospital discriminated against Longsoldier because of his race—Native American—and because of his disability—alcoholism. *Stricker I*, ¶ 11. After the Hospital settled with the Estate, the MHRB Hearing Officer heard the claims against the Counties during a four-day hearing in September 2011. *Stricker I*, ¶ 11. The Hearing Officer found "no evidence that [the Counties'] action or inactions . . . were the result of any discriminatory animus . . . toward either alcoholics or Native Americans." *Stricker I*, ¶ 11. The Hearing Officer therefore concluded that the Counties did not illegally discriminate against Longsoldier due to his race or disability. *Stricker I*, ¶ 11.

¶7 On the Estate's appeal, the Montana Human Rights Commission determined that two of the Hearing Officer's findings of fact were "clearly erroneous" and modified those findings. *Stricker I*, ¶ 12. The Commission remanded to the Hearing Officer to determine the appropriate relief. *Stricker I*, ¶ 12. After additional administrative proceedings, the Counties petitioned for judicial review of the Commission's final decision in the Estate's favor. *Stricker I*, ¶ 14. The District Court reversed the Commission's decision and reinstated the Hearing Officer's decision as the final agency decision. *Stricker I*, ¶ 14.

¶8 The Estate's motion to alter or amend came before a new district judge after the presiding judge retired. *Stricker I*, ¶ 15. The new presiding judge granted the motion and

4

remanded to the Commission for further proceedings. *Stricker I*, ¶ 15. The parties cross-appealed the two District Court orders to this Court. *Stricker I*, ¶ 15. In *Stricker I*, we affirmed the Hearing Officer's initial decision as supported by substantial evidence that the Counties did not discriminate against Longsoldier. ¶¶ 30-31. We held, "[T]he Montana Human Rights Act is not a proper legal remedy for [Longsoldier's] suffering." *Stricker I*, ¶ 41.

¶9    While its Human Rights Complaint was pending, the Estate filed this negligence action in 2012 against the State of Montana, as well as Blaine and Hill Counties. *Stricker II*, ¶ 7. The Estate moved for partial summary judgment against both Counties, arguing they had a non-delegable duty to provide Longsoldier with reasonable medical care and therefore were vicariously liable for the medical negligence committed by the Hospital. *Stricker II*, ¶ 7. The District Court held in February 2015 that Hill County was vicariously liable for the Hospital's medical negligence but that Blaine County was not. *Stricker II*, ¶ 7. The parties did not argue, and the District Court did not address, Hill County's duties to Longsoldier for its own alleged negligence. *Stricker II*, ¶ 7. In the same order, the District Court granted Blaine County partial summary judgment, agreeing that it owed no duty to Longsoldier.[1] The District Court thereafter stayed the proceedings pending resolution of the discrimination claims. Following our decision in *Stricker I*, the court held a scheduling conference to resume proceedings. Hill County then appealed the vicarious liability ruling after the District Court certified it as a final judgment for purposes of appeal.

---

[1] The court also granted summary judgment to the State of Montana, a ruling the Estate did not appeal.

5

*Stricker II*, ¶¶ 7-8.  We reversed the District Court and held that Hill County could not be held vicariously liable for the Hospital's medical negligence.  *Stricker II*, ¶ 18.

¶10   Before the District Court on remand, the Estate moved for summary judgment against Hill County, arguing that Hill County breached its duties and obligations to involve medical personnel in the care of Longsoldier either by failing to bring medical personnel to the jail or by failing to transport Longsoldier to obtain needed medical care elsewhere.  The Estate also moved for partial summary judgment against Blaine County, alleging that Blaine County is liable for its negligence in communicating to Hill County the Hospital's response to its inquiry and thereby failing to return Longsoldier to the Hospital.

¶11   Hill County cross-moved for summary judgment, arguing that the result of the discrimination action filed with the MHRB bars the Estate's negligence action under the theory of res judicata and/or collateral estoppel.  Blaine County also moved for summary judgment against the Estate, again asserting that it owed no duty to Longsoldier.

¶12   Regarding Blaine County, the District Court found, "The only overt negligent act alleged in the Complaint against Blaine County is in the communication of information to and from the hospital to Hill County."  Based on the Hearing Officer's factual determination that the Hospital's "nurse persuaded [the Blaine County] dispatcher Longsoldier was probably faking it and just wanted out of jail," the court found that it had been factually established that Blaine County was not negligent in communicating this information.  The District Court further held that, "[a]ny duty for custody or care of A.J. Longsoldier was legitimately transferred to, and assumed by, Hill County" per the agreement between the Counties and awarded Blaine County judgment as a matter of law.

6

¶13     Regarding Hill County, the District Court ruled that res judicata did not apply and that the Estate is not precluded from bringing its negligence claims. The District Court held nonetheless that "the issue of medical treatment and/or failing to transport Mr. Longsoldier back to [the Hospital] after his initial discharge was actually and necessarily decided by [the] hearings officer[.]" The court therefore concluded that collateral estoppel bars the Estate from relitigating factual issues in its negligence claim that the Hearing Officer decided—which includes all alleged conduct occurring after Longsoldier's transport to the Hospital after November 21, 2009. The District Court therefore granted Hill County's motion for summary judgment.

¶14     The District Court determined that the Estate had not established the absence of genuine issues of material fact and denied the Estate's motions for partial summary judgment against the Counties.

## STANDARDS OF REVIEW

¶15     "We review a district court's ruling on summary judgment de novo, applying the same criteria as the district court under M. R. Civ. P. 56." *Stricker II*, ¶ 9 (citation omitted). "Thus, we review the ruling to determine if genuine issues of material fact existed and whether the moving party was entitled to judgment as a matter of law." *Stricker II*, ¶ 9 (citation omitted). "A district court's application of res judicata or collateral estoppel is reviewed de novo." *Denturist Ass'n of Mont. v. State*, 2016 MT 119, ¶ 8, 383 Mont. 391, 372 P.3d 466 (citations omitted).

**DISCUSSION**

¶16  *1. Are the Estate's negligence claims against the Counties barred by issue preclusion?*

¶17  The Estate alleges that the District Court erred in concluding that issue preclusion bars its negligence claims against Hill County because the determinative facts were decided by the Hearing Officer in the MHRB discrimination case.

¶18  Res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, are doctrines that seek to conserve judicial resources and prevent inconsistent judgments by barring a party from relitigating an issue that already has been litigated and decided in a prior suit. *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267 (discussing the judicial policies of res judicata and collateral estoppel); *Rooney v. City of Cut Bank*, 2012 MT 149, ¶ 17, 365 Mont. 375, 286 P.3d 241 (discussing the effect of preclusion). "When the exhaustion of administrative remedies produces an administrative decision that is upheld on judicial review, principles of issue and claim preclusion properly may be applied to redundant claims made under other laws." *Rooney*, ¶ 17 (citing *Parini v. Missoula Cty. High Sch. Dist.*, 284 Mont. 14, 23, 944 P.2d 199, 204 (1997)).

¶19  Claim preclusion bars re-litigation, following a final judgment on the merits, of a claim that the party already had an opportunity to litigate. *Baltrusch*, ¶ 15 (citation omitted). The District Court held that claim preclusion does not apply. The Counties do not challenge that ruling, and we do not consider that theory further.

¶20 Issue preclusion bars the reopening of an issue that has been litigated and determined in a prior suit. *Baltrusch*, ¶ 15 (citation omitted). We examine four factors to determine whether re-litigation of an issue is barred:

1) Was the issue decided in the prior adjudication identical to the issue raised in the action in question?

2) Was there a final judgment on the merits in the prior adjudication?

3) Was the party against whom preclusion is asserted a party or in privity with a party to the prior adjudication?

4) Was the party against whom preclusion is asserted afforded a full and fair opportunity to litigate the issue that may be barred?

*Rooney*, ¶ 17 (citing *McDaniel v. State*, 2009 MT 159, ¶ 28, 350 Mont. 422, 208 P.3d 817). All four elements must be satisfied for issue preclusion to apply. Issue preclusion "bars re-litigation of determinative facts that were actually or necessarily decided in a prior action, even if they were previously decided under a different legal theory." *Rooney*, ¶ 17 (citing *Rafanelli v. Dale*, 1998 MT 331, ¶¶ 12, 14, 292 Mont. 277, 971 P.2d 371).

¶21 "The identity of issues is the most important element of issue preclusion." *Planned Parenthood v. State*, 2015 MT 31, ¶ 13, 378 Mont. 151, 342 P.3d 684 (citing *Stapleton v. First Sec. Bank*, 207 Mont. 248, 258, 675 P.2d 83, 89 (1983)). "Unless it clearly appears that the precise question involved in the second case was raised and determined in the former, the judgment is no bar to the second action." *Planned Parenthood*, ¶ 13 (quoting *Phx. Mut. Life Ins. Co. v. Brainard*, 82 Mont. 39, 44, 265 P. 10, 12 (1928)).

¶22 "To determine whether the issue decided in the prior adjudication is identical to the issue raised in the present case, we compare the pleadings, evidence, and circumstances

9

surrounding the two actions." *McDaniel*, ¶ 33 (citations omitted). The bar that arises from collateral estoppel "extends to all questions essential to the judgment and actively determined by a prior valid judgment." *McDaniel*, ¶ 33 (citations omitted).

> "If a new legal theory or factual assertion in an action is related to the subject matter of a prior action and is relevant to the issues that were litigated and adjudicated in the prior action, 'so that it *could* have been raised,' then the judgment in the first action is conclusive as to that legal theory or factual assertion, despite the fact that the theory or assertion was not expressly pleaded or otherwise urged."

*Rooney*, ¶ 21 (quoting *McDaniel*, ¶ 33, emphasis in original).

¶23 The Estate contends that the tort claims before the District Court present separate and distinct issues from the discrimination claims argued before the MHRB because those claims employ different legal standards. The Estate notes the Hearing Officer's framing of the administrative decision: "The key issue in this case is whether either or both counties illegally discriminated against Longsoldier in government services, because of race and/or disability."

¶24 The Counties respond that "[t]he pivotal issue in both cases [ ] is whether the County's actions, or its failure to act, caused Longsoldier's suffering and death." The Counties argue that issue preclusion applies because the sole difference between the Estate's discrimination complaint before the MHRB and the negligence complaint before the District Court is the legal theory upon which each is based. *Rooney*, ¶ 17.

¶25 The Montana Human Rights Act establishes the exclusive remedy for acts constituting an alleged violation of statutes prohibiting retaliation or illegal discrimination, including acts that also may constitute a violation of the discrimination provision of

10

Article II, Section 4, of the Montana Constitution or § 49-1-102, MCA. *Clark v. McDermott*, 2022 MT 186, ¶ 20, 410 Mont. 174, 518 P.3d 76 (citing § 49-2-512, MCA). The Commission for Human Rights has the authority to "sit in independent judgment of complaints of alleged discrimination in Montana[.]" Section 49-2-205, MCA. As the HRC has exclusive jurisdiction of discrimination claims brought under Montana law, an aggrieved party must bring such claims before the HRC before pursuing them in court. *Jones v. Mont. Univ. Sys.*, 2007 MT 82, ¶ 38, 337 Mont. 1, 155 P.3d 1247; § 49-2-512(1) MCA.

¶26 Section 49-2-308(1)(a), MCA, provides:

> It is an unlawful discriminatory practice for the state or any of its political subdivisions[] to refuse, withhold from, or deny to any person any local, state, or federal funds, services, goods, facilities, advantage, or privileges because of race, creed, religion, sex, marital status, color, age, physical or mental disability, or national origin, unless based on reasonable grounds[.]

The parties acknowledge that the HRC has no authority to determine a common-law negligence claim. The Counties nonetheless contend that the Hearing Officer was required by statute to determine if there were "reasonable grounds" for the Counties' actions under § 49-2-308(1)(a), MCA. Because the Hearing Officer made specific findings that there were "reasonable grounds" for the Counties' actions, they maintain that the doctrine of issue preclusion bars the Estate from relitigating the facts underlying its negligence claims.

¶27 Issue preclusion does not apply where the tribunal in the first action lacked authority to decide a particular issue. The Eighth Circuit Court of Appeals held in *Smith v. Johnson* that issue preclusion did not bar an inmate's § 1983 action because the same issue was not, and could not have been, presented in a previous negligence claim before the Claims

11

Commission. 779 F.3d 867, 871 (8th Cir. 2015). "To invoke issue preclusion [ ] a defendant must establish not only that a claim arises from the same facts, but that the *same issue* was decided in the prior proceeding." *Smith*, 779 F.3d at 871 (citation omitted, emphasis in original). The court noted that under Arkansas law, a party invoking issue preclusion must establish that "the precise issue" was decided in the first proceeding. *Smith*, 779 F.3d at 871. Montana follows a similar approach. *See Phx. Mut. Life Ins. Co.*, 82 Mont. at 44, 265 P. at 12; *Stapleton*, 207 Mont. at 258, 675 P.2d at 89; *Planned Parenthood*, ¶ 13 (the "precise question" must have been determined in the prior proceeding for issue preclusion to apply). The *Smith* court reasoned that the Claims Commission could not have determined the plaintiff's § 1983 claims because, although it was the only forum in which the plaintiff could bring a claim against the *State*, the Commission did not have the jurisdiction to address a constitutional claim against an officer *individually*. *Smith*, 779 F.3d at 870. Because the plaintiff in *Smith* brought only a negligence claim before the Commission, he was not precluded from bringing a deliberate indifference claim in a § 1983 lawsuit against the officer. *Smith*, 779 F.3d at 871. *See also Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 195 (6th Cir. 1986) (although collateral estoppel barred the claim that plaintiff was discharged without cause, it did not bar the claims for retaliatory discharge and intentional infliction of emotional distress, as the Michigan Employment Security Commission was not empowered to determine those issues in its administrative proceeding on whether plaintiff was fired for misconduct, nor would the Commission be able to provide plaintiff with any remedy if it made a positive finding on those claims); *Vest v. Bd. of Educ. of Nicholas Cty.*, 455 S.E. 2d 781, 785

(W. Va. 1995) (noting that "for preclusion to attach to quasi-judicial determinations of administrative agencies, at least where there is no statutory authority directing otherwise, the prior decision must be rendered pursuant to the agency's adjudicatory authority and the procedures employed by the agency must be substantially similar to those used in a court") (internal quotations and citation omitted); C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Civil* § 4417 ("Issues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits be the same") (quoting *Peterson v. Clark Leasing, Corp.*, 451 F.2d 1291, 1292 (9th Cir. 1971)).

¶28    The Counties compare this case to our decisions in *Rooney* and *Clark*. We held in *Rooney* that where the plaintiff did not raise his retaliation and double standard claims before the Police Commission and did not show a legal reason why he *could not* have done so given the Commission's broad authority to review an officer's discipline, his failure to present those theories before the Commission allowed the District Court to give preclusive effect to the Commission's decision. ¶ 21 (citing *McDaniel*, ¶ 33). We held in *Clark* that where the plaintiff's claim in the district court—"political discrimination"—was the same as his Human Rights Complaint, claim preclusion barred its re-litigation. ¶¶ 19, 34.

¶29    *Rooney* and *Clark* are distinguishable from this case because in both cases the issues before the agencies were identical to the issues raised before the district court. In *Rooney*, we reasoned that the Police Commission's finding that substantial evidence supported the plaintiff's termination from employment foreclosed his later assertion in a wrongful discharge suit that he was not fired for good cause. *Rooney*, ¶ 22. "By upholding the Police Commission's decision [on judicial review], the District Court decided the determinative

13

facts underlying the issue of good cause for Rooney's termination." *Rooney*, ¶ 22. Once the district court upheld the Commission's determination, there was a preclusive final judgment on the issue of wrongful termination. *Rooney*, ¶ 23.

¶30   In *Clark*, even though the HRC was not the exclusive remedy for a federal claim under 42 U.S.C. § 1983, we applied principles of claim and issue preclusion to bar Clark from bringing his discrimination claims in state court because he did not challenge the district court's judgment affirming the HRC's decision that McDermott did not discriminate against him. *Clark*, ¶ 30. "Clark alleged, in both proceedings, that the County took adverse employment action against him because he was McDermott's political rival and because of his political stance." *Clark*, ¶ 31. We noted that, but for "minor and stylistic" differences in his pleadings, the allegations were virtually identical. *Clark*, ¶ 31. Once the HRC's decision was upheld, it was given preclusive effect because the underlying facts for both claims were the same. *Clark*, ¶ 32.

¶31   The Estate's Complaint for negligence alleged that the Defendants:

> Unlawfully and negligently failed to exercise due care for the safety and care of Longsoldier, including but not limited to breach of their duties to screen his health upon admission to the detention center and thereafter, accurately and fully to communicate information to [sic] regarding the health status of Longsoldier, safely and properly to care for Longsoldier, to obtain and administer prescription medications for Longsoldier, to follow and administer policies calculated to keep inmates safe and to provide care to them, and otherwise to keep Longsoldier safe and to care for him.

Whereas Rooney could have raised his retaliation and double standard claims before the Police Commission, the Estate could not have brought this negligence claim before the HRC, which lacks the authority to adjudicate negligence. And whereas Clark's § 1983

14

complaint rested upon identical claims of discrimination he had asserted in his human rights complaint, the Estate's negligence claim is not based upon discriminatory animus—it is based upon the Counties' alleged breach of a duty of reasonable care to a person committed to their custody.

¶32 This Court has noted that "[i]n conjunction with its anti-discrimination provisions, the MHRA establishes procedures and remedies, separate from tort law, for legal redress of conduct which falls within the definition of unlawful discrimination." *Saucier v. McDonald's Rests. of Mont., Inc.*, 2008 MT 63, ¶ 39, 342 Mont. 29, 179 P.3d 481. The Hearing Officer determined that there was no evidence Longsoldier's death resulted from the Counties' discriminatory animus toward him. *Stricker I*, ¶ 11. Whereas the MHRB action asked whether the injury was caused by discriminatory animus, the negligence action asks whether the defendant breached a duty of care that caused the injury.

¶33 Under § 49-2-308(1)(a), MCA, a finding of "reasonable grounds" is not necessary to the MHRB's decision unless it first finds that the State engaged in a discriminatory practice. Any finding of "reasonable grounds" is tied to a government actor's refusal or denial of services for a *discriminatory* reason. The Hearing Officer here found "no evidence" that the Counties discriminated against Longsoldier. *Stricker I*, ¶ 11. Once that finding was made, the facts "essential to the [MHRB's] judgment" were "necessarily decided." *See McDaniel*, ¶ 33; *Rooney*, ¶ 17. "If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded." *Restatement 2d of Judgments, § 27, cmt. h*. Reasonableness was not essential to the MHRB's judgment, and any factual findings on

15

that point do not preclude litigation of the Estate's negligence claim. *McDaniel*, ¶ 33; *Restatement 2d of Judgments, § 27, cmt. h*.

¶34 The Estate could not bring a negligence claim before the MHRB because, as noted by the District Court, the MHRB lacks the authority to decide the issue of negligence. Because of the limited extent of the MHRB's jurisdiction, the Estate did not have a full and fair opportunity to litigate its negligence claim in that forum. Further, contrary to the Counties' argument, the "pivotal issue" before the MHRB was whether the Counties' actions or inactions were the result of discriminatory animus. The Hearing Officer did not decide the identical issue that the Estate seeks to litigate in the present action.

¶35 We conclude that the Estate's negligence claims are not barred by issue preclusion. The District Court erred in granting summary judgment to Hill County on that theory.

¶36 *2. Is Blaine County entitled to judgment as a matter of law that it owed Longsoldier no duty?*

¶37 Blaine County first suggests that law of the case forecloses the Estate's appeal because it did not seek interlocutory review of the 2018 partial summary judgment order when we considered Hill County's appeal in *Stricker II*. Blaine County contends that because Hill County obtained an interlocutory appeal of the order that found Hill County vicariously liable for the Hospital's negligence, the Estate also should have sought appeal of the District Court's grant of summary judgment to Blaine County in the same order.

¶38 "A final judgment conclusively determines the rights of the parties and settles all claims in controversy in an action or proceeding. . . ." M. R. App. P. 4(1)(a). When a case involves multiple parties or multiple claims for relief, an order or judgment that adjudicates

16

fewer than all claims as to all parties and leaves matters in the litigation undetermined is not appealable. M. R. App. P. 6(5)(a). The District Court's order granting partial summary judgment to Blaine County was not a final, appealable order.

¶39 Montana Rule of Civil Procedure 54(b)(1) provides:

> When an action presents more than one claim for relief -- whether as a claim, counterclaim, crossclaim, or third-party claim -- or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

¶40 In directing entry of final judgment under Rule 54(b), the District Court must balance competing factors and "expressly determine[ ] that there is no just reason for delay, as required by M. R. Civ. P 54(b) and M. R. App. P. 6(6)." *Rogers v. Lewis & Clark Cty.*, 2020 MT 230, ¶ 13, 401 Mont. 228, 472 P.3d 171. On Hill County's motion, the District Court certified as final its order granting partial summary judgment against Hill County, finding the factors satisfied. The Estate did not waive its right to appeal a final judgment by choosing not to seek certification of the partial summary judgment ruling in favor of Blaine County at the same time.

¶41 On the merits, Blaine County contends that it did not owe Longsoldier any duty because the written contract between the Counties fully and expressly delegated to Hill County the duty to detain and care for Blaine County arrestees housed at the Hill County Detention Center. It directs the Court to the District Court's order that found Hill County was vicariously liable for the Hospital's negligence and that Blaine County was not.

17

¶42 Although the District Court determined that Blaine County had no duty to provide medical care to Longsoldier while incarcerated in the Hill County Detention Center, it found that Blaine County retained a duty of transportation. The Estate's negligence claim against Blaine County is premised on the communications between Blaine County and Hill County relating to Longsoldier's transportation to the Hospital. The Estate posits that had the Blaine County dispatcher, in communications with Hill County, accurately represented what the Hospital nurse said to the dispatcher, Longsoldier would have been transported back to the Hospital sooner and in time to receive proper care. To the extent Longsoldier has a standalone claim against Blaine County, it relates only to the County's retained responsibility for transportation. The District Court erred in finding that "the only negligent acts alleged to have been committed by Blaine County go to custody, detention, and care" for Longsoldier, which Hill County had exclusively assumed. Again, any factual findings the Hearing Officer made regarding Blaine County's actions or inactions in this regard are not determinative of whether Blaine County violated its admittedly narrow duty of care to Longsoldier under the facts alleged. We decide only that the District Court erred in holding as a matter of law that Blaine County had no duty at all.

¶43 *3. Did the District Court err in denying the Estate's motion for summary judgment?*

¶44 The Estate alleges that the plaintiff's summary judgment motions against the Counties should have been granted because the Estate's facts were unrebutted under M. R. Civ. P. 56. The Estate contends that the Counties did not rebut the expert opinions of Rebecca Luethy and Jeff Eiser, nor did the Counties offer their own expert testimony.

18

¶45 "In a summary judgment proceeding, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences will be drawn in favor of the party opposing summary judgment." *Butler v. Domin*, 2000 MT 312, ¶ 20, 302 Mont. 452, 15 P.3d 1189 (citation omitted). "Summary judgment is an extreme remedy which should not be a substitute for a trial on the merits if a material factual controversy exists." *Putnam v. Cent. Med. Ctr.*, 2020 MT 65, ¶ 12, 399 Mont. 241, 460 P.3d 419 (citation omitted).

¶46 Having considered the complete record in this case, we conclude that genuine issues of material fact remain. We affirm the District Court's denial of the Estate's motion for partial summary judgment.

## CONCLUSION

¶47 We reverse the District Court's order granting summary judgment for the Counties and affirm its order denying partial summary judgment for the Estate. The case is remanded for further proceedings.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ INGRID GUSTAFSON
/S/ JAMES JEREMIAH SHEA

19